■ In the Matter of PHIL CARUSO, as President of the Patrolmen's Benevolent Association of the City of New York, Inc., et al., Respondents, v BENJAMIN WARD, as Police Commissioner of the City of New York, et al., Appellants. — Order of the Supreme Court, New York County (Grossman, J.), entered October 3, 1984, which granted a preliminary injunction to the petitioners-respondents pending the outcome of a grievance proceeding against a practice of the Police Department of the City of New York, reversed, on the law, and the preliminary injunction denied, without costs.

The dissent sets forth the background and the problem.

The issue is whether the Police Commissioner should be hamstrung in his executive direction of his Department, which is a "quasi-military organization" (*Matter of Bal v Murphy,* 55 AD2d 26, 29, *affd* 43 NY2d 762), pending the hearing on the grievance filed against his policy with respect to review by the commanding officer of the file in the office of the Civilian Complaint Review Board for a police officer for whom three or more complaints have been filed since January 1, 1983 and four or more since January 4, 1982. That unsubstantiated complaints are included in the number does not violate due process. If an officer is complaint prone, regardless of the validity of the complaint, that could call for an analysis as to why and also as to how the situation could be remedied. No sanction is expressed or implied.

If, as a matter of labor relations, a grievance is substantiated, then the situation can be redressed. The practice should not now be interdicted. (*Matter of Cooke v Police Dept.*, 38 NY2d 803, *affg the Per Curiam at* 45 AD2d 486.) Concur — Kupferman, J. P., Fein, Milonas and Ellerin, JJ.

Sullivan, J., dissents in a memorandum as follows: Since I believe that the preliminary injunction was properly issued I would affirm.

In 1972, at the direction of the then Police Commissioner, the Police Department's Chief of Personnel issued Memorandum No. 48, which barred the dissemination to superior officers of information concerning unsubstantiated complaints against police officers investigated by the Civilian Complaint Review Board. According to a Police Department order, an unsubstantiated complaint is one in which "the investigation discloses insufficient evidence to clearly prove or disprove the allegations made."

On May 3, 1984 the present Police Commissioner met with the president of the Patrolmen's Benevolent Association (PBA) and its counsel to discuss a proposed change in departmental policy with respect to the reporting of Civilian Complaint Review Board dispositions. Under the new procedure the Board would calculate, excluding unfounded or withdrawn complaints or those instances where the officer was exonerated, the number of investigated complaints against an officer within a limited time period. If the number of complaints, including those that were unsubstantiated, fell within certain criteria established by the Commissioner (e.g., three or more complaints since Jan. 1, 1983, four or more since Jan. 1, 1982), the commanding officer would be notified and asked to review the file at the Board's office. According to the Commissioner, this procedure was being adopted to increase the ability of commanding officers to develop satisfactory community relations and to ensure compliance with police procedures. The Commissioner was also concerned about the Department's potential liability for the conduct of officers who had been the subject of past civilian complaints.

The PBA representatives at the May 3, 1984 meeting complained of the basic unfairness of failing to distinguish between substantiated and unsubstantiated complaints. When counsel reminded the Commissioner of Chief of Personnel Memorandum No. 48 and advised him that the publication of unsubstantiated complaints would constitute a violation of that directive, the Commissioner responded that he had the authority to revoke a previous Commissioner's order. At that time neither the Com-

missioner nor any member of his staff made any mention of Operations Order No. 36, upon which the Commissioner now relies and of which he then, presumably, was unaware.

Insofar as is pertinent, Operations Order No. 36, issued on April 2, 1979, and which had as its main purpose the revocation of the 1956 edition of the Police Department's Rules and Procedures, as well as additional memoranda and orders, provides: "In addition to the revocation of the Rules and Procedures, the following directives, which have been incorporated into the Department Manual or published in another * * * department directive, are also REVOKED * * * Chief of Personnel Memo No. 48, series 1972".

Within weeks of the May 3, 1984 meeting with the Commissioner, the PBA, alleging a "violation * * * of the rules, regulations, or procedures of the Police Department", instituted a grievance procedure pursuant to article XXIII of its collective bargaining agreement with the City of New York. Inasmuch as grievance proceedings are protracted and since the grievance forum, the New York City Office of Management and Labor Relations, lacks the power to stay implementation of the Commissioner's new policy regarding publication of unsubstantiated civilian complaints, the PBA commenced this CPLR article 78 proceeding to obtain such injunctive relief pending determination of the grievance.

In the course of applying for a temporary restraining order, counsel for the PBA learned for the first time of the existence of Operations Order No. 36 which, purportedly, revoked Chief of Personnel Memorandum No. 48. The PBA also learned at that time that shortly after the 1979 publication of Operations Order No. 36, the Civilian Complaint Review Board began notifying commanding officers of unsubstantiated civilian complaints made against members of their commands. According to the PBA, neither the Commissioner nor any other high-ranking member of the Department or member of the Civilian Complaint Review Board had ever made any mention of this practice.

The PBA's grievance is based on a "violation of Chief of Personnel Memorandum #48", which barred the Civilian Complaint Review Board from reporting unsubstantiated complaints which it had investigated. The collective bargaining agreement defines a grievance as a "claimed violation, misinterpretation or misapplication of the rules, regulations, or procedures of the Police Department affecting terms and conditions of employment".

The Commissioner argues that the PBA cannot succeed in its grievance since there is no current rule, regulation or procedure

prohibiting his proposal to disseminate reports of unsubstantiated complaints investigated by the Civilian Complaint Review Road. In support of this argument he cites Operations Order No. 36, which he contends revoked Chief of Personnel Memorandum No. 48, and which, since it predates the current collective bargaining agreement, constitutes a term and condition of employment.

Although it is undisputed that Operations Order No. 36 was promulgated in accordance with departmental regulations and distributed to all commands, the PBA's argument that it is misleading on its face is well taken. In revoking certain enumerated directives, among which is listed Chief of Personnel Memorandum No. 48, Operations Order No. 36 plainly states that said directives "have been incorporated into the Department Manual or published in another type of department directive". Under the circumstances it was not unreasonable for the PBA to conclude, as it claims, that the "revocation" was nothing more than a recodification of departmental rules and regulations and that the Department had reissued the substance of Chief of Personnel Memorandum No. 48 elsewhere. Moreover, it defies credulity to believe that the PBA would have stood by silently at the time of its issuance had Operations Order No. 36 the effect which the Commissioner now claims it had. The loss of confidentiality with respect to unsubstantiated civilian complaints against its members is too valuable a right to lose without protest, as the current grievance demonstrates. Notwithstanding that he commands a paramilitary organization, not even a Police Commissioner may unilaterally alter a term or condition of employment.

Since a serious question exists regarding the Commissioner's power to implement a new policy as to unsubstantiated complaints, and it is apparent that any publication of such complaints prior to May 3, 1984 was without notification to the PBA or the police officers affected, an injunction against such publication pending resolution of the grievance is appropriate. As Special Term aptly noted, "[T]he equities overwhelmingly favor the [PBA]. The possibility of irreparable harm to the careers of police officers is obvious, and no injury will result to the [Commissioner] if transmission of unsubstantiated complaints to commanding officers is held in abeyance pending the outcome of the grievance proceeding. Those unsubstantiated complaints can always be forwarded * * * after the grievance proceeding".